No. 23-50162

# United States Court of Appeals
# for the Fifth Circuit

UMG Recordings, Incorporated; Capitol Records, L.L.C.;
Warner Bros. Records, Incorporated; Sony Music
Entertainment; Arista Records, L.L.C.; Arista Music;
Atlantic Recording Corporation; Capitol Christian Music
Group, Incorporated; Elektra Entertainment Group,
Incorporated; Fonovisa, Incorporated; Fueled by Ramen,
L.L.C.; LaFace Records, L.L.C.; Nonesuch Records,
Incorporated; Rhino Entertainment Company; Roadrunner
Records, Incorporated; Roc-A-Fella Records, L.L.C.; Tooth
& Nail, L.L.C.; Zomba Recording, L.L.C.,

*Plaintiffs—Appellees/Cross-Appellants*,

*versus*

Grande Communications Networks, LLC,

*Defendant—Appellant/Cross-Appellee.*

On Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-cv-000365-DAE

### Response to the Labels' Petition for Rehearing En Banc

Richard L. Brophy
rbrophy@atllp.com
Zachary C. Howenstine
zhowenstine@atllp.com
Armstrong Teasdale, LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 621-5070

Dana Livingston
dlivingston@cokinoslaw.com
Cokinos Young, P.C.
900 S. Capital of Texas Hwy.,
Suite 425
Austin, Texas 78746
Telephone: (512) 482-9304

*Counsel for Appellant/Cross-Appellee Grande Communications Networks, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... i

TABLE OF AUTHORITIES .............................................................. iii

COUNTERSTATEMENT OF THE ISSUE ...................................... 1

INTRODUCTION ............................................................................... 1

STATEMENT OF FACTS .................................................................. 2

ARGUMENT ...................................................................................... 3

I.  The Panel correctly applied the statutory mandate ...................... 3

II. In this case, unlike others, there is no dispute about whether the registered works are compilations ................................................ 4

III. The Panel's holding gives effect to the statutory incentive scheme embodied in sections 412 and 504 ............................................... 5

    A.  Sections 412 and 504 embody a statutory *quid pro quo* .......... 5

    B.  The "functional" tests of other circuits undermine the statutory scheme .................................................................................. 8

        1.  Compilation registrations do not require identification of constituent works ....................................................... 8

        2.  Other circuits' "functional" tests undermine the statutory incentive scheme ..................................... 10

        3.  The statute does not leave copyright owners without remedies .................................................................. 10

IV. The Labels offer no legitimate basis for deviating from the statutory text. ............................................................................. 11

A.     The Labels mischaracterize the Panel's holding ................................ 11

B.     The Labels invent a motive for section 504(c)(1) that is at odds with the statutory scheme ................................................. 13

C.     The Labels' speculative "parade of horribles" cannot justify judicially rewriting the statute .......................................... 14

D.     The correct path to "uniformity" is to apply the statute as written ........................................................................ 16

Conclusion ........................................................................... 17

Certificate of Service .......................................................... 18

Certificate of Compliance .................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.,*
747 F.3d 673 (9th Cir. 2014) ...................................................... 9

*Bouchat v. Bon-Ton Dep't Stores, Inc.,*
506 F.3d 315 (4th Cir. 2007) .................................................. 6-7

*Conn. Nat'l Bank v. Germain,*
503 U.S. 249 (1992) ................................................................... 3

*Derek Andrew, Inc. v. Poof Apparel Corp.,*
528 F.3d 696 (9th Cir. 2008) ..................................................... 7

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC,*
586 U.S. 296 (2019) ................................................................. 15

*Gamma Audio & Video, Inc. v. Ean-Chea,*
11 F.3d 1106 (1st Cir. 1993) .............................................. 4, 13

*Johnson v. Jones,*
149 F.3d 494 (6th Cir. 1998) ..................................................... 7

*Jordan v. Sony BMG Music Ent. Inc.,*
354 F. App'x 942 (5th Cir. 2009) ............................................ 10

*Kay Berry, Inc. v. Taylor Gifts, Inc.,*
421 F.3d 199 (3d Cir. 2005) .................................................... 13

*Latin Am. Music Co. v. Archdiocese of San Juan of Roman Cath. &*
*Apostolic Church,*
499 F.3d 32 (1st Cir. 2007) ........................................................ 7

*Mason v. Montgomery Data, Inc.,*
967 F.2d 135 (5th Cir. 1992) ..................................................... 6

*MCA Television Ltd. v. Feltner,*
89 F.3d 766 (11th Cir. 1996) ..................................................... 4

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012) ...................................................................... 3

*Rubin v. United States*,
    449 U.S. 424 (1981) ...................................................................... 3

*Ryan v. Editions Ltd. W., Inc.*,
    786 F.3d 754 (9th Cir. 2015) ........................................................ 7

*S. Credentialing Support Servs., L.L.C. v. Hammond Surgical Hosp., L.L.C.*,
    946 F.3d 780 (5th Cir. 2020) .................................................. 6, 11

*Sullivan v. Flora, Inc.*,
    936 F.3d 562 (7th Cir. 2019) .................................................. 4, 13

*Szabo v. Errisson*,
    68 F.3d 940 (5th Cir. 1995) ........................................................ 10

*VHT, Inc. v. Zillow Grp., Inc.*,
    69 F.4th 983 (9th Cir. 2023) ........................................................ 4

## Statutes and Regulations

17 U.S.C. § 101 ............................................................................... 8

17 U.S.C. § 205 ............................................................................... 9

17 U.S.C. § 408 ............................................................................. 13

17 U.S.C. § 409 ....................................................................... 9, 13

17 U.S.C. § 411 ............................................................................. 15

17 U.S.C. § 412 ..................................................... 1-2, 5-7, 10, 12-16

17 U.S.C. § 504(a) ........................................................................ 11

17 U.S.C. § 504(c)(1) ........................................ 1, 3, 5-8, 10, 11, 13-17

37 C.F.R. pt. 201 ............................................................................ 4

37 C.F.R. pt. 202 ............................................................................. 4

37 C.F.R. § 202.4 ...................................................................... 11-13

## Other Authorities

84 Fed. Reg. 22762 (proposed May 17, 2019) (to be codified at 37
    C.F.R. pts. 201-02) ............................................................... 4

H.R. Rep. No. 94-1476 (1976) ...................................................... 3

*Hearing Before the Subcomm. on Cts. & Intell. Prop. of the H. Comm. on
    the Judiciary*, 106th Cong., 2d Sess. (May 25, 2000) (statement of
    Marybeth Peters, Register of Copyrights, U.S. Copyright Office),
    *available at* https://www.copyright.gov/docs/regstat52500.html ...................... 4

U.S. Copyright Office, Circular 34: Multiple Works (Mar. 2021),
    http://www.copyright.gov/circs/circ34.pdf ........................................ 11

Under section 504(c)(1) of the Copyright Act, statutory damages are assessed on a per-work basis. 17 U.S.C. § 504(c)(1). For purposes of that subsection, "all the parts of a compilation or derivative work constitute one work." *Id.* Plaintiffs-Appellees ("Labels") concede that their registered albums are compilations. Are the individual songs on those albums eligible for separate statutory damage awards, even though they are only registered as parts of compilations?

## INTRODUCTION

The Panel applied the unequivocal mandate of 17 U.S.C. § 504(c)(1): For purposes of statutory damages, all the parts of a compilation constitute one work. Congress expressed its intention in unambiguous terms. The Labels concede that their registered albums are compilations. All that remains is to apply the statutory mandate, as the Panel correctly did.

The legislative history confirms the Panel's reading of the statute's plain text. The Panel's holding also gives effect to the statutory incentive scheme embodied in sections 412 and 504 of the Copyright Act. All courts agree that Congress implemented the scheme to incentivize prompt registration, so that would-be infringers may check the copyright register to find out if a work is protected. Although other circuits have avoided the statutory text in favor of various "functional" approaches that permit multiple awards of statutory damages for the

parts of registered compilations, those circuits failed to consider the statutory public-notice incentive scheme. Here, the Panel correctly rejected the Labels' invitation to repeat that error.

The Labels' *en banc* petition should be denied.

## STATEMENT OF FACTS

The Panel Opinion correctly describes the facts pertinent to the issue the Labels raise in their *en banc* petition.

At trial, the Labels asserted contributory copyright infringement claims against Grande regarding 1,403 individual songs, reflected in 662 unique copyright registrations.[1] ROA.9880-901. There were more songs than registrations because many of the Labels' registrations pertain to an entire album of music. *See* ROA.9880-901.

The district court determined that each song was eligible for a separate award of statutory damages based on testimony that the songs were "available to the public on an individual basis"—i.e., sold separately—"during the relevant time period of 2011 to 2017." ROA.11044. Because this was error, the Panel vacated the jury's award of statutory damages and ordered a new trial on damages. Op.35-42.

---

[1] Trial began with the Labels alleging infringement of 1,422 songs and 669 registered copyrights. The district court found that 19 songs were not eligible for statutory damages under 17 U.S.C. § 412, lowering the number of registrations to 662. ROA.9928-30.

## I.   The Panel correctly applied the statutory mandate.

It is axiomatic that "the best evidence of Congress's intent is the statutory text." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012).  When the statutory text is unambiguous, as it is here, "judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

Section 504(c)(1) of the Copyright Act states that statutory damages are assessed on a per-work basis and, "[f]or purposes of this subsection, all the parts of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1).  This directive is clear and unambiguous.  The Panel therefore correctly determined that "[t]he plain language of the Copyright Act mandates the conclusion that each registered compilation is eligible for only one award of statutory damages." Op.36.

The legislative history unequivocally confirms the Panel's conclusion:

> Where the suit involves infringement of more than one separate and independent work, minimum statutory damages *for each work* must be awarded. . . . .  Subsection (c)(1) makes clear, however, that *although they are regarded as independent works for other purposes*, "all the parts of a compilation or derivative work constitute one work" for this purpose.

*See* H.R. Rep. No. 94-1476, at 162 (1976) (emphasis added) ("House Report").  It is difficult to imagine how Congress could more clearly express its intent.

## II. In this case, unlike others, there is no dispute about whether the registered works are compilations.

The Labels concede that their registered albums are collective works—i.e., compilations—under the statute.[2]  *See* Op.39.  This concession distinguishes this case from others cited by the Labels, in which the central dispute was whether the works at issue were compilations.  *See VHT, Inc. v. Zillow Grp., Inc.*, 69 F.4th 983, 988-93 (9th Cir. 2023) (groups of photographs); *Sullivan v. Flora, Inc.*, 936 F.3d 562, 567-72 (7th Cir. 2019) (groups of illustrations); *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769-70 (11th Cir. 1996) (television episodes); *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1116-17 (1st Cir. 1993) (television episodes).  The predicate question in those cases—"Is this a compilation?"—is not at issue here, so

---

[2] Record companies choose to register albums as collective works so they can enjoy the benefits of treating them as "works made for hire."  *See Sound Recordings as Works Made for Hire: Hearing Before the Subcomm. on Cts. & Intell. Prop. of the H. Comm. on the Judiciary*, 106th Cong., 2d Sess. (May 25, 2000) (statement of Marybeth Peters, Register of Copyrights, U.S. Copyright Office), *available at* https://www.copyright.gov/docs/regstat52500.html (noting record companies' argument that "the vast majority of commissioned sound recordings qualified as works made for hire because they were contributions to collective works or compilations, two categories of works included in the statutory definition"); *see also* Group Registration of Works on an Album of Music, 84 Fed. Reg. 22762 (proposed May 17, 2019) (to be codified at 37 C.F.R. pts. 201-02) [hereinafter "Notice of Proposed Rulemaking"] ("In practice, most music albums are registered as collective works by record companies that authored or own the collective work and the sound recordings on the album.").

all that remains is to apply the statutory mandate, treating each registered album as "one work" for statutory damages purposes.[3] 17 U.S.C. § 504(c)(1).

## III. The Panel's holding gives effect to the statutory incentive scheme embodied in sections 412 and 504.

In addition to being mandated by the statutory text, the Panel's decision gives effect to the statutory *quid pro quo* embodied in sections 412 and 504 and designed to encourage prompt registration. The Copyright Act's text, its legislative history, and the case law of the various circuits uniformly affirm three important principles:

    i.    Registration of copyright claims serves an important public-notice function.

    ii.    Congress implemented section 412 to incentivize prompt registration so that would-be infringers can search the register to find out if a work is protected.

    iii.    Sections 412 and 504(c) must be harmonized in service of the statutory incentive scheme.

### A. Sections 412 and 504 embody a statutory *quid pro quo*.

When it overhauled the Copyright Act in 1976, Congress recognized that "[c]opyright registration . . . is useful and important to users and the public at large . . . and should therefore be induced in some practical way." House Report at 158.

---

[3] The Labels suggest that the Panel "purported to give dispositive weight to the works' registration certificates." Pet.14. Not so. The Panel simply considered the registration certificates—which "bear numerous hallmarks of compilations"—as further evidence that the registered albums are compilations. *See* Op.39-40.

Congress therefore enacted section 412, titled "Registration as prerequisite to certain remedies for infringement," "to encourage early registration, thus allowing potential infringers to determine whether a work is protected." *S. Credentialing Support Servs., L.L.C. v. Hammond Surgical Hosp., L.L.C.*, 946 F.3d 780, 786 (5th Cir. 2020).

This Court has "emphasized the need for [section 412] to be read consistently with" section 504(c). *Id.* at 785; *accord Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 330-331 (4th Cir. 2007) (instructing that section 412 "must be read in harmony with § 504"). With that imperative in mind, "the work" in section 412 must necessarily be the "one work" of section 504. *See Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143 (5th Cir. 1992) ("We look to section 504 for assistance in understanding section 412 because section 412 bars an award of statutory damages 'as provided by section 504.'").

Thus, as the Panel correctly recognized, "[t]o be eligible for statutory damages for infringement of 'any one work' under § 504, the copyright owner must have registered 'the work' within the time required by § 412." Op.36. This principle disposes of the notion, advanced by the Labels, that there is a "definitional gap" in section 504(c). Pet.6-7. There is no such gap because the "work" under section 504(c) is the "work" that was registered under section 412.

Courts uniformly agree that Congress implemented the statutory *quid pro quo* of sections 412 and 504 to promote public notice of copyright ownership, allowing would-be infringers to determine what works are subject to protection. *See, e.g., Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 762 (9th Cir. 2015) ("Congress sought to encourage copyright holders to make a public record of their rights before attempting to hold others liable for the infringement of those rights."); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008) ("[Section] 412 encourages potential infringers to check the Copyright Office's database."); *Bouchat*, 506 F.3d at 329 ("Registration . . . put[s] the world on constructive notice of the copyright owner's claim."); *Latin Am. Music Co. v. Archdiocese of San Juan of Roman Cath. & Apostolic Church*, 499 F.3d 32, 40 (1st Cir. 2007) ("Under federal copyright law, remedies for infringement are tied to copyright registration, which provides incentive to owners to register copyrights and 'also provides potential infringers with an incentive to check the federal register.'" (quoting *Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998))). In these cases, courts unflinchingly applied the incentive scheme, even when its application foreclosed statutory damages for otherwise meritorious copyright claims. *See Derek Andrew*, 528 F.3d at 702-03; *Bouchat*, 506 F.3d at 331-32.

**B. The "functional" tests of other circuits undermine the statutory scheme.**

Other circuits addressing section 504(c)(1) have adopted various "functional" tests that ask factfinders to examine whether constituents of compilations have "independent economic value." *See* Op.37 (citing cases). Those circuits apparently failed to recognize that section 504(c)(1)'s statutory mandate serves the very same public-notice regime that they have faithfully applied elsewhere.

A copyright owner registering a compilation is not required to identify the constituent individual works, so the registration may not provide notice that those works are registered. The mandate that "all the parts of a compilation . . . constitute one work" ensures that statutory damages will not be awarded where the owner failed to provide such notice.

1. Compilation registrations do not require identification of constituent works.

When copyright owners choose to register a compilation,[4] they must provide the title of the compilation, but they are not required to identify the constituent

---

[4] The term "compilation" includes "collective works," which by definition are composed of "separate and independent works." 17 U.S.C. § 101. But as discussed herein, even though a compilation may be made up of separate works, those works are not eligible for separate awards of statutory damages.

works. *See* 17 U.S.C. § 409(6), (9) (requiring only "the title of the work" and "a brief, general statement of the additional material covered by the copyright claim being registered"); *see also Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 680 (9th Cir. 2014) ("The requirement [in § 409] that the application must include the 'title of the work' refers to the collective work itself."). So a copyright owner can register an *album* without identifying the *songs* on the album, in which case the registration certificate and the Copyright Office database will feature the album title, but not the song titles.

That choice has real-world consequences in providing public notice of each work that is subject to protection. Indeed, many of the Labels' registrations at issue here identify only the compilation (album) without identifying the individual songs that make up the album. *See, e.g.*, ROA.339735-36 (album titled "St. Vincent"). Other parts of the statute confirm the primacy of a work's title in providing notice. Under section 205, "[r]ecordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document, but only if [the document] *specifically identifies the work* to which it pertains so that . . . it would be revealed by a reasonable search *under the title or registration number* of the work." 17 U.S.C. § 205 (emphasis added). In applying section 205, this Court has specifically distinguished an album registration that lists individual song titles from

9

an album registration that lists only the album title.  *See Jordan v. Sony BMG Music Ent. Inc.*, 354 F. App'x 942, 946 (5th Cir. 2009).

> 2.  Other circuits' "functional" tests undermine the statutory incentive scheme.

Allowing individual works to be eligible for "special statutory remedies," even though their titles don't appear on the copyright register, undermines the public notice function of sections 412 and 504.  *See* House Report at 158 (a copyright owner "should not be given special statutory remedies unless the owner has, by registration, made a public record of his copyright claim").  Accordingly, section 504(c)(1) requires the parts of a compilation to be treated as one work for purposes of statutory damages.[5]  Any other rule—including the "functional" approaches adopted by other circuit courts—undermines the objective of the public-notice scheme embodied in the statutory *quid pro quo* of sections 412 and 504.

> 3.  The statute does not leave copyright owners without remedies.

The Labels are wrong to suggest that applying the statutory mandate may leave copyright owners empty-handed.  A successful copyright plaintiff is always entitled to seek actual damages and the defendant's profits, no matter when the work

---

[5] Registration of a compilation *is* sufficient to register the individual constituent works for other purposes, such as the ability to bring an infringement suit.  *See, e.g.*, *Szabo v. Errisson*, 68 F.3d 940, 944 (5th Cir. 1995).  By its terms, section 504(c)(1) is expressly limited to the purpose of determining statutory damages.

was registered. 17 U.S.C. § 504(a); *see also S. Credentialing*, 946 F.3d at 787 ("The unavailability of statutory damages in this situation does not mean there is nothing to deter postregistration infringements. Actual damages are available when a plaintiff can prove them."). Then too, if claimants want to maximize their ability to seek statutory damages, they may use other registration mechanisms, such as registering each song individually, using the "unit of publication" option, or using the group registration option—any of which would identify each constituent work and therefore provide the public notice that Congress intended.[6]

## IV. The Labels offer no legitimate basis for deviating from the statutory text.

The Labels urge this Court to replicate other courts' errors in the interest of "national uniformity." Pet.11-12. In addition to disregarding the clear text of the statute, the Labels' arguments mischaracterize the Panel's holding, ignore the statutory scheme, and postulate outcomes that will not come to pass.

### A. The Labels mischaracterize the Panel's holding.

According to the Labels, the Panel found that the statute "'mandates the conclusion' that an independent work included in a compilation is categorically

---

[6] *See* 37 C.F.R. § 202.4; *see also* U.S. Copyright Office, Circular 34: Multiple Works (Mar. 2021), http://www.copyright.gov/circs/circ34.pdf (describing registration options for multiple works); Notice of Proposed Rulemaking, *supra* note 2 (describing registration options for sound recordings on an album prior to March 2021, when group registration of works on an album was added at 37 C.F.R. § 202.4(k)).

ineligible for a statutory damages award." Pet.11-12 (alteration omitted) (quoting Op.36). From there, the Labels present a parade of horribles in which any song that appears on an album at any time would never be eligible for an individual statutory damage award. *Id.* at 11-13. The Labels complain that "the panel's rule serves no purpose other than to punish copyright owners for their decision to include their standalone works on compilations in addition to commercializing them individually." *Id.* at 13.

This is a transparent attempt to manufacture problems that do not exist. What the Panel *actually* held is that the statute "mandates the conclusion that each *registered compilation* is eligible for only one award of statutory damages." Op.36 (emphasis added). The Panel also explained that the "work" that is eligible for a statutory damage award is the "work" that is registered within the time required by section 412. *See id.*

The Labels fail to acknowledge that, to obtain statutory damage awards for individual songs, a copyright owner can simply register each song individually or use one of the other mechanisms for registering individual works together. The Panel Opinion does not foreclose this. Indeed, the Panel recognized that group registration of songs (rather than compilation registration of an album) would yield a different outcome. *See* Op.41 n.19 (citing 37 C.F.R. § 202.4). Any of these options would

provide the public notice Congress intended by identifying each constituent work by title.[7]

## B. The Labels invent a motive for section 504(c)(1) that is at odds with the statutory scheme.

The Labels argue that the only function of "the last sentence of Section 504(c)(1)" is to prevent copyright plaintiffs from receiving a windfall. Pet.12-13. The Labels cite nothing in support of this assertion. It appears that the Labels simply made it up to diminish the import of the text.[8] Equally striking, the Labels offer no authority or rationale for placing this provision of section 504(c)(1) in a silo, ignoring its connection to section 412 and the overall statutory scheme. In short, the Labels offer no basis for deviating from the statutory text.

---

[7] The distinction between registering a compilation and registering multiple individual works together in a single registration seems to have tripped up other courts. Congress authorized the Register of Copyrights to establish regulations for group registration of certain works. *See* 17 U.S.C. § 408(c); *see also Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203-205 (3d Cir. 2005). Accordingly, the regulations allow for group registration of multiple individual works of specific, enumerated types, such as published photographs and contributions to periodicals. *See* 37 C.F.R. § 202.4 ("Group registration"). The rule makes clear that, "[f]or purposes of registration, the group as a whole is not considered a compilation, a collective work, or a derivative work under [§ 504(c)(1)]." 37 C.F.R. § 202.4(r). While correctly noting that multiple individual works may be registered together, courts have apparently failed to appreciate the difference between group registration and registration of a compilation. *See, e.g.*, *Gamma Audio*, 11 F.3d at 1117 & n.8; *Sullivan*, 936 F.3d at 567-68. A key distinction between the two mechanisms is that, unlike group registration, registration of a compilation does not require the claimant to identify the titles of the constituent works. *See* 17 U.S.C. § 409(6), (9).

[8] The Labels neglect to mention that section 504(c)(1) regularly yields "windfalls" for copyright plaintiffs. Take *Sullivan v. Flora, Inc.*: the jury found $143,500 in actual damages but awarded $3.6 million in statutory damages. 936 F.3d at 567. In this case, the Labels did not attempt to prove any actual damages.

**C.    The Labels' speculative "parade of horribles" cannot justify judicially rewriting the statute.**

The Labels assert that "the panel's rule"—i.e., giving effect to the statute's plain text—"would create more confusion in the lower courts," such as when a song is added to an album or released as a single.  Pet.13-14.  But this argument again ignores other registration options available to copyright owners, including registering the individual songs when they are released.  Indeed, the Labels themselves exercised that option for many songs at issue in this case, typically when they were released individually before the album's release.  In those instances, the "work" registered under section 412 was the song, not the album, so the restriction of section 504(c) doesn't apply.  All the imagined "confusion" melts away if the work that is eligible for statutory damages under section 504 is the same work that was timely registered under section 412.  At bottom, the Labels' speculation about confusion only underscores the wisdom of applying the statute as written.

Further, under the Labels' approach, a work that is part of a compilation (like a song on an album) might become a "work" for purposes of section 504(c) at some unknown time after the compilation is registered.[9]  An author could register the

---

[9] The Labels assert that "[i]t is undisputed that, **at the time Plaintiffs' rights were infringed**, Plaintiffs commercialized all but four of the 1,403 sound recordings at issue individually, and not solely as parts of compilations."  Pet.4 (emphasis added).  Not so.  The Labels offered no evidence of whether songs had been individually "exploited" by the date of infringement—they offered only

compilation without identifying the constituent works, and then later "exploit" one or more of the works, thereby gaining the extraordinary remedy of statutory damages without providing any further notice to the public. Congress cannot have intended the statutory scheme in sections 412 and 504(c) to require complicated inquiries into when a work was "exploited" or began to live "its own copyright life." Applying the statute's plain language, as the Panel did, avoids all these complications and contingencies.

Even if there were merit to the Labels' policy arguments, the Labels' recourse must be through the legislative process. This Court may not rewrite the statute to address perceived shortcomings. The Supreme Court recently emphasized this tenet in considering a different provision of the Act designed to induce prompt registration of copyright claims. *See Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019) (addressing 17 U.S.C. § 411(a)). Despite recognizing that "the statutory scheme [of section 411(a)] has not worked as Congress likely envisioned" owing to issues with the Copyright Office's administration, the Court instructed that "that factor does not allow us to revise § 411(a)'s congressionally composed text." *Id.* at 309. That principle applies with equal force here. As the

---

blanket statements that they exploited the songs at some unspecified time during the 2011 to 2017 period. *See* ROA.11657-58, 12788, 12548-49.

Panel correctly noted, the Labels' policy arguments "are best directed at Congress." Op.41.

**D.     The correct path to "uniformity" is to apply the statute as written.**

Finally, the Labels' appeal to "national uniformity" is easily refuted. Pet.11-12. Under the Labels' flawed reasoning, the path to "the uniformity Congress desired" leads away from the text of the statute itself. Uniformity for its own sake cannot override the Court's duty to apply the statutory mandate. Even then, as the Panel recognized, there really is no "uniformity" among the other circuits on this issue. Op.37-39. While their rationales vary, they do have two things in common: they deviate from the plain text of the statute and do not account for the statutory incentive scheme embodied in the interaction of sections 412 and 504.

The Panel's holding actually promotes uniformity. As discussed in Section III(A) *supra*, the circuits uniformly recognize that sections 412 and 504 embody a statutory public-notice incentive scheme. The Panel's holding, unlike those of other circuits, gives effect to that uniformly recognized scheme, whose application in this context other circuits have apparently failed to consider.

In the end, the Labels' arguments appear to be non-textual policy proposals best suited for Congress. None justifies rewriting the statute's unambiguous text.

## CONCLUSION

The Panel correctly applied the unambiguous mandate of 17 U.S.C. § 504(c)(1).  The Labels' petition for rehearing *en banc* should be denied.

Respectfully submitted,


Richard L. Brophy
Zachary C. Howenstine
ARMSTRONG TEASDALE, LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  (314) 621-5070
Facsimile:  (314) 621-5065
E-mail:  rbrophy@atllp.com
E-Mail:  zhowenstine@atllp.com

*/s/ Dana Livingston*
Dana Livingston
COKINOS YOUNG, P.C.
900 S. Capital of Texas Hwy., Suite 425
Austin, TX 78746
Telephone: (512) 482-9304
Facsimile:  (512) 610-1184
E-mail: dlivingston@cokinoslaw.com

*Counsel for Defendant—Appellant/Cross-Appellee Grande Communications Networks LLC*

## CERTIFICATE OF SERVICE

I certify that on November 25, 2024, a copy of the foregoing document was filed and served electronically through the Court's Electronic Case Filing System on lead counsel of record for Plaintiffs—Appellees/Cross-Appellants:

| | |
|---|---|
| Andrew H. Bart<br>abart@jenner.com<br>JENNER & BLOCK, LLP<br>1155 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212) 891-1645<br>Facsimile: (212) 909-0805<br><br>*Counsel for Plaintiffs—Appellees/Cross-Appellants* | Paige Arnette Amstutz<br>pamstutz@scottdouglass.com<br>SCOTT, DOUGLASS<br>   & MCCONNICO LLP<br>303 Colorado St.<br> Suite 2400<br>Austin, Texas 78701<br>Telephone: (512) 495-6300<br>Facsimile: (512) 495-6399<br><br>*Counsel for Plaintiffs—Appellees/Cross-Appellants* |
| Michael Anthony Petrino<br>mpetrino@steinmitchell.com<br>STEIN MITCHELL BEATO<br>   & MISSNER, LLP<br>2000 K Street, Suite 600<br>Washington, DC 20006<br>Telephone: (202) 601-1604<br>Facsimile: (202) 296-8312<br><br>*Counsel for Plaintiffs—Appellees/Cross-Appellants* | Ian Heath Gershengorn<br>igershengorn@jenner.com<br>JENNER & BLOCK, LLP<br>Suite 900<br>1099 New York Avenue, N.W.<br>Washington, DC 20001-4412<br><br>*Counsel for Plaintiffs—Appellees/Cross-Appellants* |

*/s/ Dana Livingston*
Dana Livingston

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,888 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365, in 14 point Equity, with the exception of footnotes, which are in 12 point Equity, as permitted by 5th Cir. R. 32.1.

*/s/ Dana Livingston*
Dana Livingston