No. 23-50162

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

UMG RECORDINGS, INC.; CAPITOL RECORDS, L.L.C.; WARNER
BROS. RECORDS, INC.; SONY MUSIC ENTERTAINMENT; ARISTA
RECORDS, L.L.C.; ARISTA MUSIC; ATLANTIC RECORDING
CORPORATION; CAPITOL CHRISTIAN MUSIC GROUP, INC.;
ELEKTRA ENTERTAINMENT GROUP, INC.; FONOVISA, INC.;
FUELED BY RAMEN, L.L.C.; LAFACE RECORDS, L.L.C.;
NONESUCH RECORDS, INC.; RHINO ENTERTAINMENT
COMPANY; ROADRUNNER RECORDS, INC.; ROC-A-FELLA
RECORDS, L.L.C.; TOOTH & NAIL, L.L.C.; ZOMBA RECORDING,
L.L.C.,

*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

GRANDE COMMUNICATIONS NETWORKS, L.L.C.,

*Defendant-Appellant/Cross-Appellee.*

On Appeal from the United States District Court
for the Western District of Texas (Austin)
No. 1:17-cv-000365-DAE

## PLAINTIFFS-APPELLEES/CROSS-APPELLANTS' RESPONSE
## TO DEFENDANT-APPELLANT/CROSS-APPELLEE'S PETITION
## FOR REHEARING *EN BANC*

**[caption continued on next page]**

Paige Arnette Amstutz
SCOTT, DOUGLASS &
MCCONNICO LLP
303 Colorado Street
Suite 2400
Austin, TX 78701
(512) 495-6300
pamstutz@scottdoug.com

Andrew H. Bart
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
abart@jenner.com

Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

No. 23-50162, *UMG Recordings, Inc., et al. v. Grande Communications Networks, L.L.C.*

Undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may exercise possible disqualification or recusal.

1) Plaintiffs-Appellees/Cross-Appellants: UMG Recordings, Inc., Capitol Records, L.L.C., Warner Records Inc. f/k/a Warner Bros. Records Inc., Sony Music Entertainment, Arista Records, L.L.C., Arista Music, Atlantic Recording Corporation, Capitol Christian Music Group, Inc., Elektra Entertainment Group, Inc., Fonovisa, Inc., Fueled by Ramen L.L.C., LaFace Records, L.L.C., Nonesuch Records Inc., Rhino Entertainment Company, Roadrunner Records, Inc., Roc-A-Fella Records, L.L.C, Tooth & Nail, L.L.C, Zomba Recording, L.L.C.

2) Plaintiffs-Appellees/Cross-Appellants' Trial and Appellate Counsel: Andrew H. Bart, Jacob L. Tracer (motion to withdraw granted on 12/26/23) (Jenner & Block LLP); Michael Anthony Petrino (Stein

Mitchell Beato & Missner, LLP); Paige Arnette Amstutz (Scott, Douglass & McConnico LLP).

3) Plaintiffs-Appellees/Cross-Appellants' Additional Appellate Counsel: Ian Heath Gershengorn (Jenner & Block LLP).

4) Plaintiffs-Appellees/Cross-Appellants' Additional Trial Counsel: Kevin Attridge, Robert B. Gilmore, Philip O'Beirne (Stein Mitchell Beato & Missner LLP).

5) Defendant-Appellant/Cross-Appellee: Grande Communications Networks, L.L.C.

6) Defendant-Appellant/Cross-Appellee's Trial and Appellate Counsel: Richard L. Brophy, Zachary C. Howenstine, Mark A. Thomas (Armstrong Teasdale, LLP).

7) Defendant-Appellant/Cross-Appellee's Appellate Counsel: Dana Livingston (Cokinos Young, P.C.).

8) Defendant-Appellant/Cross-Appellee's Additional Trial Counsel: Abigail Twenter, Edward F. Behm, Jr., Margaret R. Szewczyk, Sydney K. Johnson (Armstrong Teasdale, LLP); Diana L. Nichols, J. Stephen Ravel (deceased), John R. Johnson (Kelly Hart & Hallman LLP);

Jennifer E. Hoekel (Husch Blackwell); Nicholas B. Clifford (Tucker Ellis LLP).

Dated: December 2, 2024

/s/ Andrew H. Bart
Andrew H. Bart
*Attorney of Record for Plaintiffs-Appellees/Cross-Appellants*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF AUTHORITIES ....................................................................v

INTRODUCTION ..................................................................................1

STATEMENT OF THE CASE AND PROCEEDINGS ...........................4

ARGUMENT ..........................................................................................7

I.    The Panel's Decision On Contributory Liability Is Correct And
      Consistent With U.S. Supreme Court Precedent...........................7

      A.    This Case Is A Poor Vehicle For *En Banc* Review
            Of Material Contribution Liability........................................7

      B.    Under Supreme Court And Fifth Circuit Precedent,
            Material Contribution Is A Valid Basis For Liability. ..........8

      C.    *Twitter* Did Not Address, Let Alone Change, The
            Contributory Copyright Infringement Standard..................13

II.   Grande's Sufficiency-Of-The-Evidence Challenge Regarding
      Direct Infringement Does Not Warrant *En Banc* Review............17

      CONCLUSION ..........................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
   166 F.3d 772 (5th Cir. 1999) ........................................................ 2, 9

*Amazon Services LLC v. U.S. Department of Agriculture*,
   109 F.4th 573 (D.C. Cir. 2024) ....................................................... 16

*BMG Rights Mgmt. (US) LLC v. Altice USA, Inc.*,
   No. 22-CV-00471, 2023 WL 3436089 (E.D. Tex. May 12,
   2023) .............................................................................................. 13

*In re Frontier Commc'ns Corp.*,
   658 B.R. 277 (Bankr. S.D.N.Y. 2024) .............................................. 15

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*,
   443 F.2d 1159 (2d Cir. 1971) ......................................................... 2, 9

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*,
   380 F.3d 1154 (9th Cir. 2004) .......................................................... 11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) .................................................................... 2, 11

*Morgan v. Swanson*,
   659 F.3d 359 (5th Cir. 2011) ............................................................ 18

*Sony Corp. of America v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ................................................................... 2, 10

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
   464 F. Supp. 3d 795 (E.D. Va. 2020), *aff'd in part, vacated
   in part, rev'd in part*, 93 F.4th 222 (4th Cir. 2024) ......................... 20

*Sony Music Entertainment v. Cox Communications, Inc.*,
   93 F.4th 222 (4th Cir. 2024) .................................................... 7, 8, 15

*Twitter, Inc. v. Taamneh,*
598 U.S. 471 (2023) ............................................................ 2, 13, 14, 15

*UMG Recordings, Inc. v. Bright House Networks, LLC,*
No. 19-cv-710, 2022 WL 4552434 (M.D. Fla. July 1, 2022) ................ 13

*UMG Recordings, Inc. v. RCN Telecom Servs., LLC,*
No. 19-cv-17272, 2020 WL 5204067 (D.N.J. Aug. 31, 2020) .............. 13

*Warner Records, Inc. v. Altice USA, Inc.,*
No. 23-cv-00576, 2024 WL 4341933 (E.D. Tex. Sept. 12,
2024), *report and recommendation adopted,* 2024 WL
4336731 (E.D. Tex. Sept. 27, 2024) ................................................ 15-16

**Other Authorities**

Fed. R. App. P. 35(b)(1) ............................................................. 17

Fifth Cir. R. 35 I.O.P. ................................................................ 17

Order, *Cox Commc'ns, Inc. v. Sony Music Ent.* (U.S. Nov. 25,
2024) (No. 24-171) ........................................................................ 2, 7, 8

Petition for a Writ of Certiorari, *Cox Commc'ns, Inc. v. Sony
Music Ent.* (U.S. Aug. 15, 2024) (No. 24-171) ............................... 2, 7, 8

# INTRODUCTION

Following a three-week trial, a jury found Defendant-Appellant/Cross-Appellee Grande Communications Networks, L.L.C. ("Grande") liable for willful contributory copyright infringement. The evidence showed that Grande, an internet service provider ("ISP"), knew that specific subscribers were using its high-speed internet service to repeatedly infringe Plaintiffs' copyrighted sound recordings. Rather than address these infringing subscribers, Grande turned a blind eye to their wrongful conduct so that it could continue collecting their subscription fees. Indeed, following a change of ownership in 2009, Grande eliminated its existing policy to terminate repeat infringers and made the affirmative decision never to terminate *any* known infringers, no matter how many infringement notices Grande received for any infringer.

Grande now requests rehearing *en banc* of the panel's decision affirming the jury's liability finding. That request should be denied.

First, it would be inefficient for this Court to devote its resources to reviewing *en banc* the panel's decision concerning the standard for contributory copyright liability, because the same issue is the subject of a pending petition for certiorari by another ISP—Cox—which was found

liable for contributory infringement on facts nearly identical to those here. *See* Petition for a Writ of Certiorari, *Cox Commc'ns, Inc. v. Sony Music Ent.* (U.S. Aug. 15, 2024) (No. 24-171). Cox's petition raised the same arguments about material contribution liability that Grande raises here, *see id.* at 15-29, and the Supreme Court recently requested the Solicitor General's views on that petition, *see* Order, *Cox Commc'ns, Inc.*, (U.S. Nov. 25, 2024) (No. 24-171). With the Supreme Court considering the same arguments Grande raises (along with the Solicitor General's views), there is little reason for the *en banc* Court to enter the fray.

Even setting aside *Cox*, *en banc* review of this issue is unwarranted. The panel correctly applied the longstanding principle that one who knowingly "materially contributes" to underlying infringement is contributorily liable. *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Grande's argument that the panel's decision conflicts with three Supreme Court cases—*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), and *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023)—is

unavailing. None of those cases involved a material contribution claim, so Grande's argument rests on the flawed premise that the Supreme Court invalidated a decades-old theory of copyright liability *sub silentio*.

Every court to consider the issue has rejected Grande's interpretation of those cases and Grande's preferred standard for contributory liability. Grande is thus asking this Court to create a circuit split. This Court should not go *en banc* to address Grande's unsupported request, at odds with decades of precedent, to create a new special-purpose immunity for ISPs that turn a blind eye to infringement.

Second, Grande's case-specific, fact-bound, and meritless challenge to the sufficiency of the evidence of direct infringement is plainly unworthy of *en banc* review. Plaintiffs forensically analyzed infringing sound recordings downloaded from Grande's subscribers, using the industry-standard software program Audible Magic, to confirm that they were exact copies of Plaintiffs' 1,403 copyrighted works in suit. The panel correctly rejected Grande's suggestion that Fifth Circuit standards require the separate introduction of every work into evidence.

Grande's petition should be denied.

## STATEMENT OF THE CASE AND PROCEEDINGS

Plaintiffs are entities affiliated with the three major record label groups in the United States: Universal Music Group, Sony Music Entertainment, and Warner Music Group. ROA.11593-94. Collectively, Plaintiffs own copyrights in or have exclusive rights to a large majority of the sound recordings commercially distributed in the United States. ROA.11594-95.

Grande is an ISP that provides high-speed internet access in exchange for monthly fees. ROA.98-100. In April 2017, Plaintiffs sued Grande for secondary copyright infringement over Grande's affirmative decision to continue providing internet services to subscribers it knew were using its services to repeatedly infringe Plaintiffs' copyrighted works. ROA.98-152; ROA.12398-400.

The underlying infringements used BitTorrent, a peer-to-peer file-sharing protocol that enables users to anonymously copy and distribute digital files directly to each other. ROA.12796-801. The BitTorrent protocol identifies users by their IP addresses only. ROA.12803. The ISP providing internet access is the only party that possesses the records necessary to match a BitTorrent user's IP address to a specific subscriber,

ROA.12802-04; ROA.12326-27, and is thus the only party capable of addressing BitTorrent users' infringing conduct. ROA.12803-04; ROA.12326-27.

Grande was made aware of those infringements by nonparty Rightscorp, Inc. ("Rightscorp"), which used proprietary technology to (1) interact with BitTorrent users and obtain their agreement to distribute unauthorized copies of copyrighted works, (2) record key facts such as the IP addresses of the infringing users and details concerning the infringed content, (3) send the ISPs providing internet access to those IP addresses an infringement notice, and (4) reconnect with the infringing IP address and download copies of the copyrighted works directly from those users. ROA.11750-55; ROA.11764-65; ROA.12084-86; ROA.12094-95; ROA.12109-115.

At trial, Plaintiffs demonstrated that Grande decided to maximize its revenues by continuing to provide high-speed internet access to, and collect subscription fees from, subscribers it knew were repeat infringers. In the early 2000s, Grande implemented an "abuse process" to address its subscribers' infringements, which included terminating known infringers. ROA.12321-22; ROA.12389-95; ROA.12332. But in 2009,

Grande was sold to a private equity firm and its new management decided to stop terminating subscribers, or taking any remedial measures, for copyright infringement, no matter how many notices Grande received identifying specific infringements committed by those subscribers. ROA.12397-400. Grande's refusal to terminate users engaged in ongoing infringement causing profound damage to copyright owners stands in stark contrast to Grande's policy of invariably and promptly terminating subscribers who did not pay their subscription fees. ROA.12738-39.

After a three-week trial, a jury unanimously found Grande liable for willful contributory copyright infringement. ROA.10005-06. On appeal, the panel affirmed the jury's liability verdict. Op. at 10-35. The panel applied the principle that a defendant may be held liable for contributory copyright infringement based on material contribution to the direct infringement. Op. at 20-35. The panel also rejected Grande's sufficiency-of-the-evidence challenge to the jury's finding that Grande's subscribers committed direct infringement. *Id*. at 14-18. However, the panel vacated the jury's damages award and remanded for a new trial on

damages. *Id.* at 35-42. Plaintiffs' *en banc* petition challenges this portion of the ruling. Dkt. 134.

## ARGUMENT

## I. The Panel's Decision On Contributory Liability Is Correct And Consistent With U.S. Supreme Court Precedent.

The panel's decision addressing contributory liability standards does not warrant *en banc* review. To start, the Supreme Court is already considering this issue in the petition filed in *Cox*, and recently called for the Solicitor General's views. *See supra* at 2. With Grande's arguments getting full consideration at the Supreme Court, it makes little sense for this Court to devote its resources to reconsidering the panel's careful decision. Moreover, while Grande asserts a conflict with the Supreme Court's decisions in *Sony*, *Grokster,* and *Twitter*, *see* Op. at 20, that argument cannot be reconciled with the language or reasoning of those cases. Indeed, every court presented with Grande's interpretation of those cases has rejected it.

### A. This Case Is A Poor Vehicle For *En Banc* Review Of Material Contribution Liability.

This Court need not review the contributory liability issue *en banc* when the Supreme Court is considering a certiorari petition on that exact issue. In *Sony Music Entertainment v. Cox Communications, Inc.*, the

Fourth Circuit affirmed a jury's finding that Cox was contributorily liable for the precise conduct at issue here: continuing to provide internet services to repeat-infringing subscribers despite knowing that those *specific* subscribers were infringing. 93 F.4th 222, 233-37 (4th Cir. 2024). The Fourth Circuit held that material contribution is an appropriate basis for contributory liability. *Id.* at 233, 235-37. *Cox* sought certiorari, arguing that *Sony*, *Grokster*, and *Twitter* require reversal—the very arguments Grande makes. *See* Petition for a Writ of Certiorari at 15-29, *supra* at 2. The Supreme Court has called for the Solicitor General's views on Cox's petition, as well as the plaintiffs' petition on an unrelated issue. Order, *Cox Commc'ns, Inc.* (U.S. Nov. 25, 2024) (No. 24-171). It would be inefficient for this Court to devote *en banc* resources to consider arguments already under Supreme Court review.

### B. Under Supreme Court And Fifth Circuit Precedent, Material Contribution Is A Valid Basis For Liability.

Even setting *Cox* aside, *en banc* review is inappropriate. For over fifty years, courts have recognized that a defendant is liable for contributory copyright infringement if it (1) had knowledge of direct infringement by third parties, and (2) "induce[d], cause[d] or materially

contribute[d]" to that infringement.  *Alcatel*, 166 F.3d at 790 (quoting *Gershwin*, 443 F.2d at 1162).

This standard arises from longstanding principles of common law and was first applied in the seminal *Gershwin* case, where the Second Circuit embraced contributory infringement as a valid theory of copyright liability.  443 F.2d at 1162.  The *Gershwin* court explained that, under those principles, "one who, with knowledge of the infringing activity, induces, causes or ***materially contributes to*** the infringing conduct of another, may be held liable as a 'contributory' infringer."  *Id.* (emphasis added).  This articulation of the contributory infringement standard has since been universally endorsed, including by the Supreme Court in *Grokster* and by this Court in *Alcatel*, both of which approvingly cited *Gershwin* and the test set forth therein.

Grande's argument that the Supreme Court silently abrogated this settled standard is meritless.  None of the three Supreme Court cases Grande cites support its argument.

In *Sony*, the Supreme Court considered whether the manufacturer and distributor of the Betamax videotape recorder could be contributorily liable for copyright infringement committed by purchasers of the product.

464 U.S. at 420. The critical fact in *Sony*, absent here, was that the case involved the sale of a physical object, and thus the defendant had no ongoing relationship with purchasers after the point of sale and did not know what its customers did with the product. *See* Op. at 21. The Court held that because the recorder was also "capable of substantial noninfringing uses," the mere purchase of the item could not support imputing to Sony knowledge of the purchasers' future infringing activity. *Sony*, 464 U.S. at 437-38, 456.

The panel correctly interpreted *Sony* as standing for the "narrow proposition that a defendant's mere sale of a product capable of infringement is not sufficient to establish the defendant's knowledge of its customers' future infringing activity" when that product is capable of non-infringing uses and the defendant has no ongoing relationship with the purchaser. Op. at 21. Since Grande had ongoing relationships with its subscribers, had direct knowledge of specific infringements by specific users, and continued to provide them with the very tool they needed to continue infringing, *Sony* is completely inapposite.

*Grokster* also involved claims against the distributor of a product that facilitated infringement—file-sharing software—where the

distributor had no ongoing relationship with its customers beyond the moment of sale.[1] 545 U.S. 913 (2005). In *Grokster*, the Ninth Circuit held that the distributor was immune from liability because its software had substantial non-infringing uses. *See id.* at 932-34.

The Supreme Court, however, disagreed and went on to expand the scope of secondary liability. *Id.* It clarified that *Sony* merely prohibits "imputing culpable intent" solely from the design or distribution of a product capable of lawful use, and that *Sony* "did not displace other theories of secondary liability." *Id.* at 933-34. Applying those broader common-law principles, the Court held a defendant that "induces commission of infringement by another" can be contributorily liable, even if it has no knowledge of specific acts of infringement. *See id.* at 934-35. Thus, as the panel here explained, "*Grokster* endorsed the broader common-law theories of contributory liability articulated in *Gershwin . . .*

---

[1] Grande's revisionist attempt to characterize *Grokster* as involving an ongoing relationship between the defendant and the direct infringers should be rejected. *See* Grande Pet. at 8. In *Grokster*, the issue was whether the distribution of file-sharing software itself was actionable. 545 U.S. at 918-19. The only contacts between the distributor and the direct infringers after the sale were advertisements sent by the distributor that had no effect on any user's actual use of the software. *Id.* at 926. Indeed, the Ninth Circuit acknowledged that customers could continue to use the software even if the Grokster platform were shut down. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 380 F.3d 1154, 1165 (9th Cir. 2004).

it didn't constrict them." Op. at 23.  Nowhere did *Grokster* suggest or hold that other preexisting common-law theories of secondary liability, such as material contribution, were invalid.

*Sony* and *Grokster* addressed the knowledge component of secondary liability where the defendant had no ongoing relationship with its customers and thus no knowledge of how those customers used the defendant's products.  Here, in contrast, the jury found that Grande knew of actual infringements by specific subscribers, and that finding was not challenged on appeal.   Thus, Grande's decision to provide those subscribers with the very high-speed internet service necessary for them to continue infringing constitutes material contribution.  Neither *Sony* nor *Grokster* addressed this issue.

No court has *ever* held that this theory of contributory liability is invalid.  To the contrary, after *Grokster*, courts have consistently embraced the material contribution standard and applied it to ISPs that knowingly provide internet services to known repeat-infringing

subscribers.  The Fourth Circuit's considered decision in *Cox*, described above, is the most prominent recent example.[2]

Given this unanimous authority, Grande's argument that *Sony* and *Grokster require* the opposite outcome cannot be credited.

## C. *Twitter* Did Not Address, Let Alone Change, The Contributory Copyright Infringement Standard.

The panel's decision and the Supreme Court's decision in *Twitter*, 598 U.S. 471, are consistent.

*Twitter* involved secondary liability claims under the Justice Against Sponsors of Terrorism Act ("JASTA").  Family members of an ISIS terrorist attack victim sued three U.S. social media companies, alleging that the companies aided and abetted ISIS by permitting it to use the platforms for "recruiting, fundraising, and spreading their propaganda."  *Id*. at 479, 481.  Plaintiffs alleged that the defendants' actionable conduct consisted of "creating their platforms and setting up their algorithms" and then standing back and watching.  *Id*. at 498.

---

[2] Multiple district courts have similarly recognized that ISPs can be liable for continuing to provide internet services to known infringing subscribers.  *See BMG Rights Mgmt. (US) LLC v. Altice USA, Inc.*, No. 22-CV-00471, 2023 WL 3436089, at *13 (E.D. Tex. May 12, 2023); *UMG Recordings, Inc. v. Bright House Networks, LLC*, No. 19-cv-710, 2022 WL 4552434, at *3-4 (M.D. Fla. July 1, 2022); *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. 19-cv-17272, 2020 WL 5204067, at *8-10 (D.N.J. Aug. 31, 2020).

There were no allegations that ISIS members used the platforms to carry out the particular terrorist attack at issue. *Id.* at 497-99.

The Supreme Court held that the defendants were not secondarily liable because they were not alleged to have knowingly provided any assistance related to that attack. *Id.* at 506-07. It explained that aiding-and-abetting claims require courts to evaluate the defendant's "assistance" to the underlying tort. *Id.* When there is no "direct nexus" between the underlying tort (the terrorist attack) and the defendant's activity (providing access to social media platforms), the defendant cannot be liable absent strong evidence of "intentional aid that substantially furthered the tort." *Id.*

The panel's decision is fully consistent with *Twitter.* As an initial matter, *Twitter* discussed aiding and abetting liability specifically under JASTA; *Twitter* had nothing to do with copyright law. *See* Op. at 24-26.

More importantly, *Twitter*'s central concern—that aiding and abetting liability generally requires a clear nexus between the defendant's actions and the underlying tortious conduct—is amply satisfied here because Grande's high-speed internet access enabled the very infringements at issue. Grande knew of specific instances of

infringement on its network by specific users and made the affirmative decision to continue providing those users with the tool necessary to continue infringing.

Unable to address *Twitter*'s critical "nexus" inquiry, Grande recharacterizes *Twitter* as creating a "protected category of content-neutral commercial activity." Grande Pet. at v, 3, 6. Every sentence in Grande's petition that makes this claim lacks a supporting citation. The aiding-and-abetting claims in *Twitter* failed not because social media platforms (or ISPs) enjoy special immunity, but because of "the lack of any concrete nexus between defendants' services and the [terrorist] attack." 598 U.S. at 500-01. Indeed, *Twitter* expressly contemplated scenarios where social media platforms might be held liable for aiding and abetting some or even all of an organization's terrorist acts. *Id*. at 502.

Every other court to consider the issue has held that *Twitter* has no bearing on an ISP's secondary liability for copyright infringement using its networks. *See Cox*, 93 F.4th at 227-38; *In re Frontier Commc'ns Corp.*, 658 B.R. 277, 297-305 (Bankr. S.D.N.Y. 2024); *Warner Records, Inc. v. Altice USA, Inc.*, No. 23-cv-00576, 2024 WL 4341933, at *1 (E.D. Tex.

Sept. 12, 2024), *report and recommendation adopted*, 2024 WL 4336731 (E.D. Tex. Sept. 27, 2024).[3]

With no cases agreeing with its interpretation of *Twitter*, Grande turns to *Amazon Services LLC v. U.S. Department of Agriculture*, 109 F.4th 573 (D.C. Cir. 2024), another non-copyright case with even less relevance. Grande Pet. at 11. *Amazon*, like *Sony* and *Grokster*, addressed the knowledge component of secondary liability (in *Amazon*, aiding and abetting liability under certain importation statutes). 109 F.4th at 578-82. The court held that there was no evidence that the defendant "was aware of the violations." *Id.* at 582. Since *Amazon* addressed the knowledge element of secondary liability but not the conduct element, it is entirely irrelevant to Grande's argument that materially contributing to copyright infringement is not actionable.

In sum, nothing in *Twitter* has any bearing on the longstanding contributory infringement standard endorsed by this Court and every other court to consider it. Rehearing *en banc* is unwarranted.

---

[3] Grande's claim that the Fourth Circuit in *Cox* did not consider *Twitter*, *see* Grande Pet. 12 n.9, is incorrect. Cox submitted a letter pursuant to Federal Rule of Appellate Procedure 28(j) regarding *Twitter* months before the Fourth Circuit issued its opinion.

**II. Grande's Sufficiency-Of-The-Evidence Challenge Regarding Direct Infringement Does Not Warrant *En Banc* Review.**

The Court should not reconsider the panel's holding that the jury's finding of direct infringement was supported by substantial evidence. Grande's argument is nothing more than a challenge to the sufficiency of Plaintiffs' evidence and is thus not suitable for *en banc* review. *See* Fed. R. App. P. 35(b)(1); *see also* Fifth Cir. R. 35 I.O.P. Grande's attempt to cloak that fact-bound challenge in an argument about Fifth Circuit precedent misstates the law and misconstrues the panel's analysis.

To prove direct copyright infringement, a "plaintiff must establish '(1) factual copying and (2) substantial similarity.'" Op. at 14 (quoting *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012)). Substantial similarity means that "the copyrighted expressions in the two works are sufficiently alike that the copyright to the original work has been infringed." *Id.* (quoting *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (per curiam)).

At trial, Plaintiffs introduced copious evidence of direct infringement. *See id.* at 14-16. As the panel recognized, the jury was presented with "extensive, forensically reliable evidence proving that the files Rightscorp downloaded were exact copies of Plaintiffs' sound

recordings." Op. at 17.  Further, Plaintiffs introduced into evidence (1) a hard drive of *all* 19,000 infringing copies of Plaintiffs' works that Rightscorp downloaded from Grande's subscribers,  ROA.45862-78134; ROA.79124-81095; (2) testimony about "the industry standard" Audible Magic software program Plaintiffs used to match the files Rightscorp downloaded from Grande's subscribers with authentic copies of Plaintiffs' sound recordings, ROA.11668-71; ROA.11675-79; ROA.11682-86;  (3) all 40,000 of the Audible Magic matching output files, ROA.86197; ROA.335181-336306; and (4) testimony about an example Audible Magic output file explaining Audible Magic's matching process and analysis, ROA.340405-07.[4]

Critically, the jury heard testimony that the Audible Magic forensic examinations confirmed that the files Rightscorp downloaded from Grande subscribers included at least one copy of each work in suit. ROA.11671-76.  The jury saw a summary exhibit identifying the metadata associated with the files Rightscorp downloaded, alongside the Audible Magic data identifying the Rightscorp downloads as particular

[4] To the extent Grande belatedly takes issue with the evidence supporting the Audible Magic analysis, *see* Grande Pet. 13 n.10, it cannot raise new challenges on rehearing *en banc.  See Morgan v. Swanson*, 659 F.3d 359, 405 (5th Cir. 2011).

sound recordings. ROA.11833. And the jury heard *unrebutted* testimony that Audible Magic was so accurate that it had never misidentified the contents of a digital file in the millions of times it was used. ROA.11671-76.

Nevertheless, Grande argues that Plaintiffs were required to enter into evidence authentic copies of each of the 1,403 works in suit. The Fifth Circuit imposes no such requirement. Rather, as the panel recognized, Grande's cited authority is distinguishable. Both cases involved a "meaningful[] dispute[]" between the parties regarding whether the defendants' alleged copies were sufficiently "similar" to the plaintiffs' works. *See* Op. at 17 (citing *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576-77 (5th Cir. 2003) and *King v. Ames*, 179 F.3d 370, 375-76 (5th Cir. 1999)). In both cases, that dispute arose because "the only evidence about the contents of the plaintiffs' works was the oral testimony of the plaintiffs themselves." *Id.* Thus, those plaintiffs failed to present sufficient evidence permitting a jury to find infringement.

Here, however, the panel correctly found there was no "meaningful dispute" about whether the files downloaded from Grande's subscribers were in fact copies of Plaintiffs' works. While Grande now claims its

inability to raise such a dispute was "because the copyrighted songs were not in evidence," Grande Pet. at 14 (emphasis omitted), that is baseless for at least two reasons.[5]

First, the jury here was not asked to rely solely on Plaintiffs' oral testimony about the contents of their works. Rather, as described above, Plaintiffs introduced voluminous forensic (and largely unrebutted) evidence demonstrating that Grande's subscribers were distributing copies of Plaintiffs' copyrighted sound recordings.

Second, unlike the defendants in *Bridgmon* and *King*, Grande had every opportunity to identify mismatches in Plaintiffs' analysis and present such evidence. *See* Op. at 17-18. All the works in suit are commercially available, *see* ROA.11657-58; ROA.12788-89; ROA.12548-49, and Plaintiffs produced their direct infringement evidence to Grande during fact discovery, years before trial. Despite having the opportunity and incentive, Grande never identified a single alleged mismatch for the jury's consideration.

_____

[5] Grande is wrong to imply that this is the only case in which copyright plaintiffs proved infringement without introducing copies of the works in suit into evidence. *See* Grande Pet. at 14-15. In fact, plaintiffs have succeeded in other mass infringement cases against ISPs without submitting such evidence. *See, e.g.*, *Sony Music Ent. v. Cox Commc'ns, Inc.*, 464 F. Supp. 3d 795, 809-10 (E.D. Va. 2020), *aff'd in part, vacated in part, rev'd in part*, 93 F.4th 222 (4th Cir. 2024).

Thus, the panel correctly rejected Grande's argument that Plaintiffs' extensive and reliable forensic evidence was insufficient to prove substantial similarity, particularly given the large number of works at issue and Grande's failure to challenge the forensic evidence.

## CONCLUSION

The Court should deny Grande's petition.

Dated: December 2, 2024

Respectfully submitted,

/s/ Andrew H. Bart

| | |
|---|---|
| Paige Arnette Amstutz | Andrew H. Bart |
| SCOTT, DOUGLASS & | JENNER & BLOCK LLP |
| MCCONNICO LLP | 1155 Avenue of the Americas |
| 303 Colorado Street | New York, NY 10036 |
| Suite 2400 | (212) 891-1600 |
| Austin, TX 78701 | abart@jenner.com |
| (512) 495-6300 | |
| pamstutz@scottdoug.com | Ian Heath Gershengorn |
| | JENNER & BLOCK LLP |
| | 1099 New York Avenue NW |
| | Suite 900 |
| | Washington, DC 20001 |
| | (202) 639-6000 |
| | igershengorn@jenner.com |

# CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2024, I caused **Plaintiffs-Appellees/Cross-Appellants' Response to Defendant-Appellant /Cross-Appellee's Petition for Rehearing** *En Banc* to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that service on opposing counsel listed below will be accomplished by the CM/ECF system.

Richard L. Brophy
Zachary C. Howenstine
Armstrong Teasdale, LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621-5070
rbrophy@atllp.com
zhowenstine@atllp.com

Dana Livingston
Cokinos Young, P.C.
900 S. Capital of Texas, Hwy.,
Suite 425
Austin, TX 78746
(512) 482-9304
dlivingston@cokinoslaw.com

/s/ Andrew H. Bart
Andrew H. Bart

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume limit of Fed. R. App. P. 35(b)(2)(A) and Fifth Cir. R. 35.5 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,879 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365, in 14-point Century Schoolbook for the main text and 12-point Century Schoolbook for the footnotes, as permitted by Fifth Cir. R. 32.1.

/s/ Andrew H. Bart
Andrew H. Bart