

Paige A. Amstutz
Direct Dial: 512.495.6343
pamstutz@scottdoug.com

July 29, 2026

**Via ECF**
U.S. Court of Appeals, Fifth Circuit
Office of the Clerk, F. Edward Hebert Building
600 S. Maestri Place, Suite 115
New Orleans, LA 70130-3408
Attn: Lyle W. Cayce, Clerk

> **Re:** **No. 23-50162; Appellees/Cross-Appellants' Supplemental Letter Brief Addressing the Impact of *Cox Commc'ns, Inc. v. Sony Music Ent.***

Dear Mr. Cayce:

Appellees/Cross-Appellants ("Plaintiffs") submit this supplemental letter brief, pursuant to Dkt. 195-2, regarding the impact of the Supreme Court's decision in *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959 (2026) ("*Cox*").

The *Cox* decision represents a material intervening change in law governing contributory copyright infringement by internet service providers. Plaintiffs do not intend to litigate the merits of this case further in light of the new standard. They informed Appellant Grande Communications Networks, LLC ("Grande") of their willingness to dismiss the case voluntarily with prejudice, with the Parties bearing their own costs. Grande declined and requested supplemental briefing in hopes of recovering substantial supersedeas bond costs. *See* Dkt. 177. Thus, the only dispute that remains is over the allocation and reasonableness of those bond costs.

The Parties should walk away from this dispute bearing their own costs. The Court can facilitate that outcome by following its normal practice when intervening Supreme Court precedent affects a case pending before it on direct appeal and "vacat[ing] the judgment below and remand[ing] for reconsideration in light of the new decision." *Utah v. Su*, 109 F.4th 313, 319 & n.10 (5th Cir. 2024). Such a ruling would ensure that, pursuant to Appellate Rule 39(a)(4), the Parties bear their own costs of appeal, as this Court previously ordered in connection with its now-vacated judgment, *see* Dkt. 118.

If the Court instead decides to address the underlying merits of this case and determines that reversal of the district court's contributory infringement judgment is warranted under the new standard, it should nevertheless order the Parties to bear their own costs on appeal. Alternatively, the Court should remand to the district court to decide the allocation and reasonableness of Grande's bond costs in light of outstanding factual and legal questions, including the validity of the relevant cost-shifting authority relied upon by Grande.

## I.      Background.

In October 2022, a jury found Grande liable for willful contributory infringement of Plaintiffs' copyrighted sound recordings and awarded Plaintiffs nearly $46.8 million in statutory damages. The district court entered judgment consistent with the jury's verdict and ordered Grande to secure a bond for that amount to stay enforcement pending appeal. On October 9, 2024, this Court affirmed the willful contributory infringement judgment but vacated the damages award and remanded for a new trial on damages. Dkts. 117-1, 118. This Court ordered the parties to pay for their own costs on appeal. Dkt. 118.

From October 9, 2024, onward, Grande could have sought to discharge its bond and stop paying premiums. But Grande waited until July 2025 before even asking Plaintiffs to consent to discharge, which they gave promptly, given the vacatur of the damage award. On August 29, 2025, Grande finally sought relief from the bond, partly on the ground that the fees it was paying to keep the bond in effect were "significant." *UMG Recordings, Inc., et al. v. Grande Comm'cs Networks LLC*, 1:17-cv-00365-DAE-AWA, Dkt. 555 (Aug. 29, 2025), at 2. Grande did not explain why it took over nine months to seek relief. The district court discharged Grande's bond on September 2, 2025. *Id.* at Dkt. 557.

Meanwhile, Grande filed a petition for writ of certiorari on March 11, 2025. On March 25, 2026, prior to ruling on Grande's petition, the Supreme Court issued a decision in *Cox*. *See Cox*, 146 S. Ct. at 967. On April 6, 2026, the Supreme Court granted Grande's petition for writ of certiorari, vacated this Court's judgment, and remanded for further proceedings in light of *Cox*. *See* Dkt. No. 171.

## II.     Vacatur and remand are appropriate because *Cox* upended Fifth Circuit precedent governing contributory infringement liability for internet service providers.

This Court's normal course of action when the Supreme Court triggers an intervening change in law is to vacate the district court's judgment and remand for further proceedings. *See Su*, 109 F.4th at 319 & n.10 (collecting cases and explaining nature of judicial hierarchy, including that "appellate courts generally sit as 'courts of review, not first view'" (*quoting Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 957 (5th Cir. 2024))); *accord, e.g.*, *McCoy v. Alamu*, 842 Fed. App'x 933 (5th Cir. 2021) (vacating district court judgment and remanding for further proceedings after Supreme Court granted, vacated, and remanded appeal); *Long v. Davis*, 706 Fed. App'x 181 (5th Cir. 2017) (same); *Kopp v. Klein*, 762 F.3d 450 (5th Cir. 2014) (same). The Court should follow its typical procedure here.

As this Court ruled before the *Cox* decision, "[p]ursuant to longstanding principles of secondary copyright liability, Plaintiffs' claim against Grande for contributory copyright infringement" required Plaintiffs to prove "that Grande induced, caused, or materially contributed" to its subscribers' direct infringement. Dkt. 117-1 at 12. Plaintiffs advanced their case on a "material contribution" theory— persuading the jury, district court, and this Court of the merits of their claim. *Id*.

*Cox* eliminated "material contribution" as a standalone theory of contributory infringement liability for internet service providers. The Supreme Court held that "[t]he intent required for contributory liability can be shown only if the party induced the infringement or the provided service is tailored to that infringement." 146 S. Ct. at 967. The Register of Copyrights decried the decision as "cataclysmic," "a very sharp break from past precedent," and "really quite a narrowing of what had been the understanding of contributory infringement."[1]

Here, vacatur and remand is not only proper as a matter of law, but also the most equitable outcome, as it would require the Parties to bear their own appellate costs by normal operation of Appellate Rule 39(a)(4), as this Court previously ordered. Dkt. 118.

**III.   Alternatively, this Court should order the Parties to bear their own costs or remand to the district court to determine the allocation and reasonableness of Grande's bond costs.**

---

[1] "Copyright Chief Decries 'Cataclysmic' High Court Cox Ruling," LAW360 (Apr. 9, 2026), available at https://tinyurl.com/4wxkx652 (last visited July 29, 2026).

Appellate Rule 39 governs the procedure for a party to recover costs incidental to an appeal in the district court. *See* Fed. R. App. P. 39(a). Among the appellate costs listed as taxable in the district court are "premiums paid for a bond or other security to preserve rights pending appeal." *Id*. 39(f)(3). While those costs are *taxable* in the district court, "Rule 39 gives discretion over the *allocation* of appellate costs to the court of appeals," which discretion may not be altered by the district court on remand. *City of San Antonio, Tx. v. Hotels.com, LP*, 593 U.S. 330, 338–40 (2021) (emphasis added). The court of appeals may, however, "delegate that responsibility [of allocating costs] to the district court" in the first instance. *Id*. at 342.

If this Court wants to revise its earlier determination about the costs of this appeal, it should exercise its discretion to order the Parties to bear their own costs under the circumstances. Alternatively, it should delegate its authority and task the district court with deciding the allocation of appellate costs because the district court is best positioned to address several related and unresolved factual and legal issues.

*First*, there is a legal question of first impression in this Circuit regarding the validity of Appellate Rule 39(f)(3)'s purported grant of authority to tax bond costs. The Supreme Court has held that 28 U.S.C. §§ 1821 and 1920 "define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 340 (2019) (quoting *West Va. Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 86 (1991)); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987) (recognizing that, by enacting § 1920, Congress "meant to impose rigid controls on cost-shifting in federal courts."). "[A]bsent such express authority, courts may not award litigation expenses that are not specified in §§ 1821 and 1920." *Rimini St.*, 586 U.S. at 339. None of the six cost categories listed in §§ 1821 or 1920 permit taxation of Grande's bond costs. *See Hotels.com*, 593 U.S. at 341 n.4 ("Supersedeas bond premiums, despite being referenced in Appellate Rule 39([f])(3), are not listed as taxable costs in § 1920."). Because there is no "express statutory authority" permitting courts to tax a litigant with such bond premiums, any request from Grande to recover them must fail.

Plaintiffs intend to object to the validity of Appellate Rule 39(f)(3) in opposing Grande's request to recover bond costs. As a matter of judicial economy, this Court should delegate that question in the first instance to the district court, which may consider Plaintiffs' legal arguments and factual concerns altogether.

4

*Second*, even if the Court reverses the district court's contributory liability judgment, there is an equitable question of whether Grande—a wealthy litigant recently relieved of a $46.8 million jury verdict—should be entitled to millions of dollars in disputed bond costs after failing to persuade any of the jury, district court, or this Court of its position. The sole basis for Grande's claim to its disputed bond costs comes from the intervening success of another litigant in another litigation, which prompted the Supreme Court to issue a summary "grant, vacate, and reversal" of Grande's petition for certiorari without any factual record before it. *See* Dkt. 172.

*Third*, Plaintiffs dispute the reasonableness of bond costs that Grande incurred. Grande has represented to counsel that it has incurred roughly $4 million in bond premium costs, but it has never substantiated that figure. Grande's failure to substantiate that expense is especially important given the unreasonableness of its delay, between October 9, 2024, and August 29, 2025, in seeking to discharge the bond. Given that this is a court of review, the district court should answer, in the first instance, whether Grande acted reasonably in incurring unnecessary bond charges between October 9, 2024, and September 2, 2025, including to the extent that fact discovery is required to answer that question.

*Finally*, to the extent that Grande is entitled to recover any bond costs, they must be offset by costs Grande has been ordered to pay as a sanction for its litigation conduct before the district court. For example, the district court long ago ordered "Grande to reimburse Plaintiffs for attorneys' fees and expert costs" after filing a "meritless" motion to strike one of Plaintiffs' expert rebuttal reports based on a "fallacy." *See UMG Recordings, Inc.,* 1:17-cv-00365-DAE-AWA, Dkt. 279, at 2, 12–13. Plaintiffs have yet to collect, including $191,618 in expert costs incurred as a result. *See id.* Dkt. 486-1 (motion for fees and costs), at 12 n.9.[2] Allowing the district court to consider all cost-related questions together would be the most efficient and equitable course of action.

## IV. Conclusion.

This Court should vacate and remand the matter to the district court for further proceedings, consistent with its normal practice in the current posture. Alternatively, the Court should order the Parties to bear their own costs or delegate responsibility for allocating and determining the reasonableness of bond costs to the district court.

---

[2] The district court denied Plaintiffs' motion for fees and costs without prejudice in light of "continued litigation" after Grande filed for appeal. *See id.* Text Order (Jan. 14, 2025).

Respectfully submitted,

*/s/ Paige Arnette Amstutz*
Paige Arnette Amstutz
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street
Suite 2400
Austin, TX 78701
(512) 495-6300
pamstutz@scottdoug.com

*Counsel of record for Plaintiffs-Appellees/Cross-Appellant*

## Certificate of Service

I certify that on July 29, 2026, a copy of the foregoing document was filed and served electronically through the Court's Electronic Case Filing System on lead counsel of record for Defendant—Appellant/Cross-Appellee:

Richard L. Brophy
rbrophy@atllp.com
Zachary C. Howenstine
zhowenstine@atllp.com
Armstrong Teasdale, LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 621-5070

Dana Livingston
dlivingston@cokinoslaw.com
Cokinos Young, P.C.
900 S. Capital of Texas Hwy.,
Suite 425
Austin, Texas 78746
Telephone: (512) 482-9304

*/s/ Paige Arnette Amstutz*
Paige Arnette Amstutz